UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| FREDDY SIMMONS, *individually and on behalf of all others similarly situated*, <br>     *Plaintiff*, <br><br>     *vs.* <br><br> BROADWAY HOME IMPROVEMENT INC., *d/b/a* ABC HI-DEF COMMUNICATIONS, *et al.*, <br>     *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) | 1:14-cv-483-JMS-DML |

### ORDER ON PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

Plaintiff Freddy Simmons filed this action against Defendants Broadway Home Improvements Inc., doing business as ABC Hi-Def Communications, and Jacob Rodabaugh (collectively, "BHI"). [Filing No. 1.] In relevant part for purposes of the pending motion, Mr. Simmons alleges that BHI failed to pay him and others similarly situated to him in accordance with the overtime requirements of the Fair Labor Standards Act (the "FLSA"). [Filing No. 1 at 6-8.] Presently pending before the Court is Mr. Simmons' Motion for Conditional Certification and Notice to Potential Plaintiffs. [Filing No. 13.] For the reasons that follow, the Court concludes that conditional certification is appropriate.

### I.
#### STANDARD OF REVIEW

The FLSA provides that an action for unpaid minimum wages or unpaid overtime compensation may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). A collective action is similar to, but distinct from, a class action brought pursuant to Federal Rule of Civil Procedure 23. *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). "The principle difference is that

plaintiffs who wish to be included in a collective action must affirmatively opt-in to the suit by filing a written consent with the court, while the typical class action includes all potential plaintiffs that meet the class definition and do not opt-out." *Id.* "Rule 23 and its standards governing class certification do not apply to a FLSA collective action." *Moss v. Putnam Cnty. Hosp.*, 2010 WL 2985301, *1 (S.D. Ind. 2010). A district court has wide discretion to manage collective actions. *Alvarez*, 605 F.3d at 449 (citing *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 171 (1989)).

An employee may only bring a collective action on behalf of other employees who are similarly situated. 29 U.S.C. § 216(b). Therefore, to decide whether to initially certify a collective action, the Court must determine whether members of the proposed class are, in fact, similarly situated. *Campbell v. Advantage Sales & Mktg., LLC*, 2010 WL 3326752, *4 (S.D. Ind. 2010). The FLSA does not define the term "similarly situated" or instruct judges when to exercise their discretion and authorize notice to potential plaintiffs. *Raymer v. Mollenhauer*, 2010 WL 3259346, *1 (N.D. Ind. 2010). Courts have held, however, that being similarly situated does not require identical positions of the putative class members; instead, it requires that common questions predominate among the members of the class. *Campbell*, 2010 WL 3326752, *4; *Alvarez*, 605 F.3d at 449.

Courts within this Circuit typically use a two-step inquiry. *Scott v. NOW Courier, Inc.*, 2012 WL 1072751, *7 (S.D. Ind. 2012); *Lallathin v. Ro Ro Inc.*, 2010 WL 2640271, *1 (S.D. Ind. 2010). The first step, also known as the notice stage, involves analysis of the pleadings and affidavits that have been submitted to determine whether notice should be given to potential class members. *Campbell*, 2010 WL 3326752, at *3-4. Although the first step of certification does not impose a high burden on the plaintiff, "this does not mean that the 'modest factual showing'

is a mere formality." *Id.* at *4. It serves as an important and functional step in the certification process because "it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Adair v. Wisconsin Bell, Inc.*, 2008 WL 4224360, *4 (E.D. Wis. 2008) (citation omitted).

The second step of certification occurs after discovery has largely been completed and allows a defendant the opportunity to seek decertification of the class or restrict the class because various putative class members are not, in fact, similarly situated as required by the FLSA. *Campbell*, 2010 WL 3326752, *3. Under this more stringent inquiry, courts typically consider the following factors: "(1) whether plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Threatt v. CRF First Choice, Inc.*, 2006 WL 2054372, *5 (N.D. Ind. 2006).

## II.
### BACKGROUND[1]

Defendant Jacob Rodabaugh is the President of BHI. [Filing No. 20-1 at 1.] BHI has five regional offices in both Indiana and Michigan. [Filing No. 20-1 at 1.] It hires technicians to install and repair satellite television equipment throughout the various regions served by BHI's offices. [Filing No. 20-1 at 1.] Each office is overseen by a regional supervisor. [Filing No. 20-1 at 1-2.] Its technicians sign various documents to perform work for BHI, including an "Independent Contractor Agreement." [Filing No. 20-2 at 3-8.] BHI currently has approximately 50

---

[1] The background set forth herein is based on the parties' pleadings and submitted affidavits, as is appropriate to determine whether the potential class members are similarly situated at the notice stage. *Campbell*, 2010 WL 3326752, at *3-4. The Court makes no judicial findings and anticipates that evidence surrounding the facts at issue will develop during discovery.

such independent contractors and previously had approximately 24 additional independent contractors. [Filing No. 20-1 at 1-2.]

In April 2013, Mr. Simmons became a technician performing satellite installation and maintenance work for BHI. [Filing No. 14-1 at 1.] As a technician, Mr. Simmons' primary job duties were to install, repair, and service satellite equipment for customers of Dish Network. [Filing No. 14-1 at 1.] He generally performed these services for Dish Network subscribers in the Central Indiana area. [Filing No. 14-1 at 1.]

Mr. Simmons signed an Independent Contractor Agreement with BHI. [Filing No. 20-2 at 3-8.] BHI provided Mr. Simmons with the satellite equipment to be used on the customer's property; Mr. Simmons was required to purchase various supplies from BHI and the cost of those supplies was deducted from his pay; and Mr. Simmons was required to attend meetings held by BHI to stay informed of BHI and Dish Network policies and procedures. [Filing No. 14-1 at 1-2.] The jobs that Mr. Simmons performed were dictated and scheduled by Dish Network and assigned to him by BHI, and he was to communicate with BHI during the workday regarding the status of his work orders. [Filing No. 14-1 at 2.] Mr. Simmons was to report to work at 6:30 a.m., and he was placed on stand-by to be available even if no orders were schedule to be performed that day. [Filing No. 14-1 at 2.]

As a technician, Mr. Simmons was paid on a piece-rate basis, meaning that he was paid a specific amount of money for each type of job or task he completed for BHI. [Filing No. 14-1 at 2; Filing No. 23 at 6 (Defendants' Answer admitting that Simmons was paid on a piece-rate basis).] The piece rate for each type of job or task did not change based on the number of hours Mr. Simmons worked. [Filing No. 14-1 at 2.] Mr. Simmons regularly worked five to six days per week, totaling approximately 50-70 hours per week. [Filing No. 14-1 at 2.] Mr. Simmons

attests that he did not receive any overtime pay for the hours he worked over 40 per week. [Filing No. 14-1 at 2.]

Mr. Simmons attests that he was treated similarly to all of the technicians who worked for BHI in Central Indiana. [Filing No. 14-1 at 3.] Mr. Simmons submitted affidavits from Scott Matthews, who worked as a technician for BHI in Central Indiana from August 2013 until January 23, 2014, [Filing No. 14-2], and Doug Jones, who worked as a technician for BHI in Central Indiana from August 2013 until January 2014, [Filing No. 14-3]. Mr. Matthews and Mr. Jones detail their jobs as technicians, how they were paid, and attest that they were treated similarly to Mr. Simmons. [Filing No. 14-2; Filing No. 14-3.]

Mike Kirkman served as a general manager for BHI from February 2013 until September 2013 and oversaw operations at BHI's locations in Evansville, Indianapolis, and Bloomington. [Filing No. 28-1.] Mr. Kirkman also attended BHI meetings and training sessions with other general managers from Indiana and Michigan. [Filing No. 28-1 at 1.] Mr. Kirkman attests that all BHI satellite technicians, regardless of their location, have the same job duties, use the same equipment provided by the Defendants, are required to attend meetings held by the Defendants, are paid on a piece-rate basis, regularly work in excess of 40 hours per week, are denied overtime pay, and are required to sign an Independent Contractor Agreement. [Filing No. 28-1 at 1-3.]

On March 27, 2014, Mr. Simmons filed a Complaint on behalf of himself and all other similarly situated BHI technicians, bringing claims against the Defendants for alleged violations of the FLSA. [Filing No. 1.] Mr. Simmons contends that he and other similarly situated individuals should have been classified as employees and paid overtime when working more than 40 hours per week. [Filing No. 1 at 1-6.] He proposes a class defined as:

> All current and former employees of Defendants who were employed as technicians or their functional equivalents at any time during the three year period preceding the filing of the Complaint in this action.

[Filing No. 1 at 8.]

## III.
### DISCUSSION

### A. Conditional Certification

Mr. Simmons argues that he has met the threshold requirements of the notice stage of the two-step certification process. [Filing No. 14 at 7.] He cites his supporting affidavits and contends that Defendants have a policy, practice, or plan by which they unlawfully deny overtime compensation to current and former technicians. [Filing No. 14 at 7.] He contends that all of BHI's technicians perform the same job duties, are subject to the same pay policies and procedures, and work similar schedules and hours without overtime compensation. [Filing No. 14 at 8-9.] Mr. Simmons files affidavits to support his allegations. [Filing No. 14-1; Filing No. 14-2; Filing No. 14-3; Filing No. 28-1.]

In response, Defendants emphasize that even at the notice stage, Mr. Simmons' burden is not just a formality and that he is required to present some evidence beyond pure speculation regarding a factual nexus between the manner in which Defendants' alleged policies affected him and the manner in which they affected the other technicians. [Filing No. 20 at 2.] Defendants make two general arguments in opposition to Mr. Simmons' motion—1) that Mr. Simmons has not presented persuasive evidence of a company-wide policy or class, and 2) that BHI technicians sign documents agreeing that they will be treated as independent contractors and, thus, they are not subject to overtime compensation. [Filing No. 20 at 7-9 (citing Filing No. 20-2).]

In reply, Mr. Simmons notes that the evidence Defendants filed in response to Mr. Simmons' motion confirms that the class at issue is "small"—74 technicians—and does not suggest

that the technicians are subject to different job duties, work rules, pay schemes, or overtime classifications. [Filing No. 27 at 6.] He cites various admissions in Defendants' Answer, which he contends demonstrate company-wide policies and practices. [Filing No. 27 at 4-5.] Mr. Simmons also argues that the independent contractor label that BHI gave its technicians is irrelevant at the notice stage. [Filing No. 27 at 8.]

The Court finds that the pleadings, as supported by Mr. Simmons' affidavit and the affidavits of Mr. Matthews, Mr. Jones, and Mr. Kirkham, collectively are sufficient at the notice stage to warrant the conditional certification of the proposed class as a collective action. In their Answer, Defendants admitted certain allegations, including that technicians are paid on a piece rate-basis; were considered independent contractors who were not paid overtime; and were subject to Defendants' control on certain things, such as scheduling, installation procedures, uniforms, vehicles, and job inspection. [Filing No. 23 at 6-9.] Defendants deny, however, that the technicians were their employees or that they had a company-wide policy or practice that resulted in the non-payment of overtime to its technicians. [Filing No. 23 at 5; Filing No. 23 at 12.]

To support his contention that all of BHI's technicians are similarly situated, regardless of location, Mr. Simmons submits various affidavits. [Filing No. 14-1; Filing No. 14-2; Filing No. 14-3; Filing No. 28-1.] Defendants emphasize that Mr. Simmons, Mr. Matthews, and Mr. Jones worked for the same BHI district and argue that their declarations "do not reveal any knowledge of the Defendants' alleged overtime practices in any district but their own." [Filing No. 20 at 5.] While this may be true, Mr. Kirkham served as a general manager for BHI and attests that all BHI satellite technicians, regardless of their location, have the same job duties, use the equipment provided by BHI, are required to attend meetings held by the Defendants, are paid on a piece-rate basis, regularly work in excess of 40 hours per week, are denied overtime pay,

and are required to sign an Independent Contractor Agreement.[2] [Filing No. 28-1 at 1-3.] This evidence is sufficient for the Court to conclude at this time that the proposed members of the class are similarly situated and that common questions predominate among them members of the proposed class.

The Court also rejects Defendants' argument that because the technicians signed documents labelling them as independent contractors they "should not be allowed to now claim that they are employees of [BHI] and owed overtime compensation because it took them over 40 hours in a week to complete a job." [Filing No. 20 at 8-9.] Defendants cite no case law supporting their position, perhaps because "[t]he Supreme Court has instructed the courts to construe the terms 'employee' and 'employer' expansively under the FLSA." Vanskike v. Peters, 974 F.2d 806, 807 (7th Cir. 1992) (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992)). "[S]tatus as an 'employee' for purposes of the FLSA depends on the totality of circumstances rather than on any technical label, [and] courts must examine the 'economic reality' of the working relationship." Vanskike, 974 at 808 (citations omitted). For that reason, whether a class member signed an independent contractor agreement should not be considered at the notice stage. See, e.g., Edwards v. Multiband Corp., 2011 WL 117232 (D. Minn. 2011) ("whether a class member signed an independent contractor agreement should not be considered at this stage") (citations omitted).

Based on the above, the Court finds that Mr. Simmons has presented sufficient evidence that the putative class members are similarly situated and that common questions predominate

---

[2] Mr. Simmons submitted Mr. Kirkman's affidavit two days after Mr. Simmons filed his reply brief, informing the Court that Mr. Kirkman contacted counsel with relevant information the day after the reply brief was filed. [Filing No. 28.] While the Court does not condone a party filing new evidence after a motion is fully briefed, the Court will consider it under these circumstances because of the timing of Mr. Kirkman's contact with counsel and because BHI has not objected to the Court's consideration of Mr. Kirkman's affidavit.

among them regarding whether Defendants violated the FLSA by not paying them overtime pay. Accordingly, at this initial stage, conditional certification is appropriate.

### B. Judicial Notice

Mr. Simmons submitted his Proposed Notice of Collective Action Lawsuit, [Filing No. 14-4], and Proposed Consent to Become Party Plaintiff Form, [Filing No. 14-5], with his motion. Defendants have not objected to either of the proposed forms.

As Mr. Simmons points out, the FLSA statute of limitations continues to run on each individual's claim until he files his written consent to join the action. *See, e.g.*, *Crane v. Residential CRF, Inc.*, 2007 WL 3334505, *1 (S.D. Ind. 2007). For that reason, the Court agrees with Mr. Simmons that Defendants have waived any objections they have to the proposed forms and that notice to the class members should not be delayed. Accordingly, the Court approves the submitted notice forms. [Filing No. 14-4; Filing No. 14-5.]

## IV.
### CONCLUSION

For the reasons stated herein, the Court **GRANTS** Mr. Simmons' Motion for Conditional Certification and Notice to Potential Plaintiffs. [Dkt. 13.] The Court **CONDITIONALLY CERTIFIES** the following class under the FLSA:

> All current and former employees of Defendants who were employed as technicians or their functional equivalents at any time during the three year period preceding the filing of the Complaint in this action.

The Court **ORDERS** Defendants to produce to Mr. Simmons' counsel a document in useable electronic format that discloses the names, home addresses, home telephone numbers, and email addresses (if known) of all potential plaintiffs (the "Technician Information") within **SEVEN BUSINESS DAYS** of this Order.

The Court **APPROVES** Mr. Simmons' proposed Notice of Collective Action Lawsuit, [[Filing No. 14-4](Filing No. 14-4)], and Consent to Become Party Plaintiff Form, [[Filing No. 14-5](Filing No. 14-5)], (collectively, the "Notice Forms").

The Court **AUTHORIZES** the Notice Forms to be immediately issued to those individuals whose information is being provided to Mr. Simmons' counsel by Defendants as required by this Order. The Notice Forms shall be mailed within **SEVEN BUSINESS DAYS** after the Defendants provide the Technician Information to Plaintiff's counsel. The Notice Forms shall be mailed by first-class mail, email, and/or overnight delivery. Notice Forms that are mailed shall include a self-addressed, postage paid return envelope. The parties are **ORDERED** to file notice with the Court when the Notice Forms have been mailed. Plaintiff is permitted to send subsequent mailings of the Notice Forms.

The potential plaintiffs shall be provided **SIXTY DAYS** after the deadline for mailing of the Notice Forms to return a Consent to Become Party Plaintiff Form opting in to this litigation, unless the parties agree to permit late filings or good cause can be shown as to why the Consent was not returned prior to the deadline. Mr. Simmons' counsel shall promptly file with the Court any executed consent forms received, along with the envelopes reflecting the date on which each consent form was postmarked.

The parties are **ORDERED** to meet and confer within **FOURTEEN DAYS** after the expiration of the opt-in deadline. The parties shall address any issues regarding the timing or substantive validity of any consent forms that have been filed. They shall make every effort to resolve any substantive or procedural disputes that exist. Within **FOURTEEN DAYS** of the opt-in deadline, the parties shall file a **REPORT** informing the Court of any disputed consent forms

and the parties' respective positions regarding their validity.  If no disputes remain after the parties have conferred, the parties shall report that to the Court.

**Distribution via ECF only:**

Mario Garcia
BRATTAIN & MINNIX
mgarcia@brattainminnix.com

Philip J. Gibbons, Jr.
GIBBONS LEGAL GROUP, P.C.
phil@gibbonslegalgroup.com

Robert J. Hunt
GIBBONS LEGAL GROUP, PC
rob@gibbonslegalgroup.com

Jeremy Andrew Peelle
PEELLE LAW OFFICE
jpeelle@peellelawoffice.com